FILED
BILLINGS, MT

2006 FEB 9 PM 2 22

PATRICK E. DUFFY, CLERK

BY _____
               DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Cause No. CR-05-70-BLG-RFC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **GERALD LEE HILL,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

On January 6, 2006, Defendant was convicted by a jury of Aggravated Sexual Abuse.

Defendant has filed a motion for judgment as a matter of law, or in the alternative, motion for

new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The Government

opposes Defendant's motion.

## ANALYSIS

**I.      Motion for Judgment as a Matter of Law**

Defendant Hill moves for judgment as a matter of law, pursuant to Rule 29(c),

F.R.Crim.P. Defendant claims that the government did not prove the required intent for his

touching of S.W. and, therefore, this Court must acquit him of the charges.

Rule 29(c), F.R.Crim.P. provides:

> A defendant may move for a judgment of acquittal, or renew such a
> motion, within 7 days after a guilty verdict or after the court discharges the
> jury, whichever is later, or within any other time the court sets during the
> 7-day period.

The Court must review the evidence in the light most favorable to the prosecution to

determine if there is relevant evidence from which a rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *United States v. Crawford*, 239 F.3d

1086, 1092 (9th Cir. 2000); *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard gives full

play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh

the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson* , 443

U.S. at 319.

To prove that Defendant sexually abused S.W., pursuant to 18 U.S.C. § 2241(c),

the United States was required to prove that Defendant was an Indian person; that the crime

occurred on the Northern Cheyenne Indian Reservation; that Defendant knowingly engaged in a

sexual act with S.W.; and that S.W. was under the age of twelve years at the time of the offense.

The jury was instructed on this.  Defendant stipulated to the location and ethnicity elements of

the offense, and the proof was uncontested that S.W. was under the age of 12.  Therefore, the

only real element left for the jury to decide was whether the Defendant knowingly engaged in a

"sexual act."

The jury was instructed that "sexual act" is defined in 18 U.S.C. § 2246 as "the

intentional touching, not through the clothing, of the genitalia of another person who has not

attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or

gratify the sexual desire of any person."

-2-

Defendant claims that the United States did not prove its intent and thus conviction must be set aside. Defendant argues that he had a "plausible reason" for shifting S.W. from her awkward position on the couch. Defendant asserts no evidence of sexual gratification or arousal was presented and no testimony was provided that S.W. felt abused, humiliated, harassed, degraded or aroused.

In *United States v. Lomayaoma*, 86 F.3d 142 (9th Cir. 1996), the Ninth Circuit found, in the context of a supervised release hearing, that it was reasonable to infer the defendant's intent by the acts themselves when Lomayaoma made an argument similar to that of the Defendant in this case. While on supervised release, Lomayaoma's probation officer filed a petition to revoke that status, claiming that he sexually abused two children. The two children testified at the hearing that he had fondled them in the vaginal area while they were in bed. Lomayaoma argued that there was no evidence that he intended to "abuse, humiliate, harass, degrade or arouse or gratify the sexual desire of any person," as required by 18 U.S.C. § 2246. The district court held that it was "reasonable to infer that [Lomayaoma]" was committing those acts with the required intent, and that decision was affirmed by the Ninth Circuit.

Along the same line of thought, in *United States v. Lee*, 232 F.3d 653 (8th Cir. 2000), the Eighth Circuit made a similar conclusion. In *Lee*, the defendant argued that his conviction was deficient because the government failed to prove his intent. The circuit said: "The absence of such evidence, however, is no defect to the government's case where the contact alleged is so clearly sexual that the jury may infer the defendant's intent." *Lee*, 232 F.3d at 655. The *Lee* Court cited *United States v. Demarrias*, 876 F.2d 674, 676 (8th Cir. 1989), where the Court

-3-

stated that the statute of "abusive sexual contact encompasses some type of contact which by their nature are sexual acts, and therefore require no showing of intent."

In *Demarrias,* the Court stated:

> Chapter 109A encompasses some types of contact which by their nature are sexual acts, and therefore require no showing of intent. Other types of contact, especially with the hand or an object, may be made for purposes other than sex. For example, a doctor administering medication to a genital area is not acting for the purpose of sexual gratification, and his conduct should not fall within chapter 109A.

*Demarrias*, 876 F.2d at 676.

Although this is not mandatory authority in this Circuit, it is highly persuasive in that it deals directly with the issue at hand. When taken in the light most favorable to the government, it is clear that Defendant had the required intent necessary for a conviction. Defendant testified at the trial that any touching he did was in the neck and shoulder region and that he was moving her from an awkward sleeping position. However, S.W. testified that Defendant toucher her underneath her pajama bottoms, both over her panties and under her panties, in her genital area. S.W. testified that she laid very still and pretended to sleep during the sexual touching and Defendant stopped touching her when his wife called out his name from another room. S.W. also testified that when she asked to call her mother, Defendant asked her if she was going to get him in trouble. The jury, as the trier of fact, could and obviously did, infer that Defendant had the intent to abuse, humiliate, harass, degrade or arouse or gratify the sexual desires of any person as required by the statute. Defendant's Motion for judgment as a matter of law is DENIED.

-4-

## II.    Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure governs motions for a new trial.  The

rule states the following in pertinent part:

> (a) **Defendant's Motion**.  Upon the defendant's motion, the
> court may vacate any judgment and grant a new trial if the
> interest of justice so requires.
>
> (b) **Time to File**.
>
> > (1) **Newly Discovered Evidence**.  Any motion for a new trial
> > grounded on newly discovered evidence must be filed within
> > 3 years after the verdict or finding of guilty.  If an appeal is
> > pending, the court may not grant a motion for a new trial until
> > the appellate court remands the case.
> >
> > (2) **Other Grounds**.  Any motion for a new trial grounded on
> > any reason other than newly discovered evidence must be filed
> > within 7 days after the verdict or finding of guilty, or within
> > such further time as the court sets during the 7-day period.

Subsection (a) of Rule 33 Fed.R.Crim.P. sets the standard that a defendant must meet in

order for the Court to order a new trial.  If the interest of justice so requires, the Court may order

a new trial if, (1) there is newly discovered evidence within three years of the verdict, or (2) if the

defendant files a Rule 33 motion within seven days of the guilty verdict.

### A.    The Prosecution's Failure to Provide Exculpatory Impeachment Evidence in Timely Manner Violated Due Process.

Defendant claims that the United States suppressed evidence favorable to him, pursuant

to *Brady v. Maryland*, 373 U.S. 83 (1963).  On January 3, 2006, the day before trial was

scheduled to commence, the government sent defense counsel an e-mail stating that she had met

with the alleged victims the previous week.  According to the email, Deanna Williams, mother of

S.W., told the prosecutor that when S.W. was in 4th grade, she claimed that a man in a pickup had

approached her at school.  S.W. later admitted the allegation was untrue.  The e-mail from the

government indicates that no police reports exists and no investigation was conducted because

S.W. admitted the allegations were untrue.  At trial, when asked about the prior false allegation,

S.W. testified that she had met with police, school personnel and counselors.

The government responds to Defendant allegations that it was only shortly before trial

that the prior false story was disclosed to the government.  The government disclosed what was

known to defense counsel via e-mail and telephone.  At the time of trial, Defendant did not

object to the use of the information and did not ask for a continuance to investigate the

information.  Defendant used the information of the prior false story to argue to the jury that

S.W. was a liar and not to be believed.

Potential *Brady* information must be turned over, not necessarily before trial, but at a time

when it is of value to the accused.  *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993).

Defendant had the information at trial and used the information to aid his defense.  At the time

evidence was originally disclosed in this case, the government did not have knowledge of the

*Brady* information.  When the government became aware of the *Brady* information, it was

disclosed.  Therefore, Defendant's *Brady* challenge is DENIED.


**B.    Allegation of Vouching by Dr. Moore**

Prior to trial, Defendant filed a motion in limine asking that government witnesses be

prohibited from vouching for the alleged victim's credibility.  Defendant's motion was granted

and the prosecutor further agreed to expressly advise her witnesses accordingly.  However,

during the direct examination of Dr. Richard Moore, the prosecutor inquired about the demeanor

of S.W. and the doctor stated that he believed her story.  Defendant objected and this Court

sustained the objection.  The jury was instructed by the Court to disregard the doctor's statement.

A healthcare professional cannot give an opinion about the credibility of a victim.  In

*United States v. Binder*, 769 F.2d 595 (9th Cir. 1985) *overruled in part on other grounds*, *United*

*States v. Morales*, 108 F.3d 1031 (9th Cir. 1987), the Ninth Circuit concluded that it was

reversible error to allow an expert to testify that the child witnesses were believable.

This Court did not allow Dr. Moore to give an opinion about the credibility of S.W.  This

Court ruled in favor of Defendant pre-trial when it granted Defendant's motion in limine

precluding such testimony.  Once Dr. Moore made the statement regarding S.W.'s credibility, an

instruction was given to the jury to disregard Dr. Moore's statement as to S.W.'s credibility.  The

jury is presumed to have followed the court's instruction to disregard the statement.  *See, Greer*

*v. Miller*, 107 S.Ct. 3102, 3109 n. 8 (1987) ("we normally presume that a jury will follow an

instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an

'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and

a strong likelihood that the effect of the evidence would be 'devastating' to the defendant.")

There is no reason for this Court to believe that the jury was incapable of obeying the curative

instruction.  Therefore, no reversible error occurred and Defendant's claim is DENIED.

### C.    Allegation of Prosecution's Closing Argument as "Fraught with Error"

#### 1.    Allegation of improper attempt to shift burden of proof.

Defendant argues that two statements made by the government during closing argument were an improper attempt to shift the burden of proof from the government to the defense.   The statements made by the government were: "[Y]our main job in this case is to decide who you are to believe" and "make a decision about whom you believe."  (Closing argument, January 5, 2006, page 3, lines 19-20; page 13, lines 19-20).  Defendant does not support his argument with citations to legal authority.

Defendant did not object to either statement during the argument so as to allow the court to review the statements he claims are error and issuing a ruling.  Despite this, in the viewpoint of this Court, the statements complained of in no way shift the burden to the defense.  The jury was properly instructed that they were to judge the credibility of the witnesses and make a determination of who to believe when testimony was contrary.  The government's statements were simply a reiteration of that instruction and were not an attempt to shift the burden of proof to Defendant.  Defendant's claim is DENIED.

#### 2.    Allegation of improper vouching.

Defendant also claims that the government vouched for S.W. in her closing argument. The statement at issue is "If there is no proof beyond a reasonable doubt, ladies and gentlemen, we wouldn't be here.  S.[], herself, is the proof beyond a reasonable doubt."

Vouching is placing the prestige of the government behind the witness, or indicating that information not presented to the jury supports the witness's testimony.  *United States v.*

-8-

*Edwards*, 154 F.3d 915, 921 (9th Cir. 1998). A prosecutor may not impart to the jury his or her

belief that a government witness is credible. *United States v. McKoy*, 771 F.2d 1207, 1210-11

(9th Cir. 1985).

It does not appear that the government expressed a personal belief as to the credibility of

S.W.; nor did they place the government's prestige behind S.W. The government did not suggest

that there was any evidence that the jury did not hear that supported S.W. Defendant argued

during closing argument that there was no evidence beyond a reasonable doubt and the

government responded that S.W.'s testimony alone was proof beyond a reasonable doubt. There

was no vouching by the government and Defendant's claim is DENIED.

> 3.    *Allegation of improper shifting of the burden of proof and comment on*
>       *defendant's silence.*

Defendant claims that the prosecution attempted to shift the burden of proof to Defendant

and improperly commented on his silence during closing arguments. As pointed out by the

government, Defendant did not object at the time the comments he complains of were made so

that the court could make proper ruling.

At trial, Defendant testified and attempted to explain how he could have been seated at a

computer right next to the couch and yet was unable to see S.W. come into the room, lie down on

the couch, and go to sleep. When further questioned with pictures that show the layout of the

room, Defendant claimed that the furniture had been moved from the photos. BIA SA Winfield

Russell, the person responsible for taking the photos, testified in rebuttal that when he took the

photographs with Defendant's permission, Defendant never reported that any of the furniture had

been moved. Defendant now claims that the furniture moving discussion in closing argument improperly shifted the burden of proof and was a comment on Defendant's right to remain silent.

In *Portuondo v. Agard*, 529 U.S. 61 (2000), the Supreme Court held that a prosecutor's comments that defendant had the benefit of being present during trial testimony so as to tailor his own testimony did not violate the defendant's constitutional rights. The comments made by prosecutors concerned defendant's credibility as a witness when he chose to take the stand. *Id.* at 69. The court stated:

> . . . when a defendant takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness . . . "[W]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witness - rules that serve the truth-seeking function of the trial - are generally applicable to him as well."

*Portuondo*, 529 U.S. at 69, citing *Brown v. United States*, 356 U.S. 148 (1958) and *Perry v. Leeke*, 488 U.S. 272 (1989).

The comments about which Defendant complains were comments by the government as to the credibility of Defendant as a witness. There was evidence in the way of photographs that question the credibility of Defendant's testimony. There is nothing violative of Defendant's Fifth Amendment rights in the comments of the government. Defendant's claim is DENIED.

### 4. *Allegation that the Jury's Verdict was Contrary to the Weight of the Evidence.*

Defendants final argument is that the jury's verdict was contrary to the weight of the evidence and Defendant requests a new trial. Defendant argues that S.W. was inherently incredible as a witness, given her previous false allegation and her demeanor at trial. Defendant

asserts that the events described by S.W. defy logic and common sense and that his story is the more credible of the two.

To grant this motion, this Court must conclude that a serious miscarriage of justice may have occurred. Rule 33(a), F.R.Crim.P. A new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir. 1981). This Court has the utmost faith in the jury system and is not of the opinion that a miscarriage of justice occurred in this case. The jury conducted a lengthy deliberation and reached a conclusion that Defendant was guilty. That is not a basis for a new trial to be granted. Defendant's claim is DENIED.

DATED this _____ day of February, 2006.

RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
DATE: 2/9/06  BY: _____
I hereby certify that a copy
of this order was mailed to:

Marcie Hurd
Vernon Woodward
USM
Probation

-11-